UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JACK KANG,

    Plaintiff

v.

SAKS FIFTH AVENUE, LLC

    Defendant

Civil Action Number: 1:19-cv-5646

Plaintiff **JACK KANG** (hereinafter "Plaintiff"), individually and on behalf of all other individuals similarly situated, hereby files suit against Defendant **SAKS FIFTH AVENUE, LLC**. (hereinafter "Defendant" or "SAKS") pursuant to the Americans with Disabilities Act, Title III, 42 U.S.C. § 12181 et seq. ("ADA"), and alleges the following:

### INTRODUCTION

1.     Plaintiff is a visually impaired and legally blind person who requires screen reading software to read website content using his computer. Plaintiff uses the terms "blind" or "visually impaired" to refer to all people with visual impairments who meet the legal definition of blindness in that they have a visual acuity with correction of less than or equal to 20 x 200. Some blind people who meet this definition have limited vision. Others have no vision.

2. Plaintiff brings this civil rights action against Defendant for its failure to design, construct, maintain, and operate its website to be fully accessible to and independently usable by Plaintiff and other blind or visually impaired people. Defendant's denial of full and equal access to its website, and therefore denial of its products and services offered thereby and in conjunction with its physical locations, is a violation of Plaintiff's rights under the Americans with Disabilities Act ("ADA").

3. Because Defendant's website, www.saksfifthavenue.com (the "Website" or "Defendant's website"), is not equally accessible to blind and visually impaired consumers in violation of the ADA, Plaintiff seeks a permanent injunction to cause a change in Defendant's corporate policies, practices, and procedures so that Defendant's website will become and remain accessible to blind and visually impaired consumers.

## JURISDICTION AND VENUE

4. This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12181, as Plaintiff's claims arise under Title III of the ADA, 42 U.S.C. § 12181, *et seq.*, and 28 U.S.C. § 1332.

5. This Court has personal jurisdiction over Defendant because it conducts and continues to conduct a substantial and significant amount of business in the State of New York, County of New York, and because Defendant's offending website is available across California.

6. Venue is proper in this District pursuant to 28 U.S.C. §1391 because Defendant conducts and continues to conduct a substantial and significant amount of business in this District, Defendant is subject to personal jurisdiction in this District, and a substantial portion of the conduct complained of herein occurred in this District.

## PARTIES

7.     Plaintiff, at all times relevant and as alleged herein, is a resident of California, County of Los Angeles. Plaintiff is a blind, visually impaired handicapped person, and a member of a protected class of individuals under the ADA, pursuant to 42 U.S.C. § 12102(1)-(2), and the regulations implementing the ADA set forth at 28 CFR §§ 36.101 *et seq*.

8.     Plaintiff is informed and believes, and thereon alleges Defendant is a corporation, incorporated in Virginia and has its principal place of business in New York, New York. Defendant is registered to do business in the State of California and has been doing business in the State of California, including this District as a foreign profit corporation.   Defendant operates over fifteen (8) locations in the County of Los Angeles, (hereinafter "SAKS").  These retail stores provide to the public important goods such as designer apparel, handbags, watches, fine jewelry, cosmetics and home décor.  Defendant's website is a *place of public accommodation* under the ADA because it serves to augment its locations by providing the general public information on the various locations and educating the general public as to its goods, and also to provide the general public with the ability to purchase goods.

9.     Defendant's locations are public accommodations within the definition of Title III of the ADA, 42 U.S.C. § 12181(7). Defendant's website is a service, privilege, or advantage of Defendant's locations.

10.    Defendant is subject to personal jurisdiction in this District. Defendant has been and is currently committing the acts or omissions alleged herein in this District that caused injury and violated the rights of Plaintiff and other blind and visually impaired consumers in contravention of the ADA. A substantial part of the acts and omissions giving rise to Plaintiff's claims occurred in this District. Specifically, Plaintiff has been denied the full use and enjoyment

of the products, goods, and services of Defendant's website in Los Angeles County. The access barriers Plaintiff encountered on Defendant's website have caused a denial of Plaintiff's full and equal access and continue to deter Plaintiff on a regular basis from accessing Defendant's website.

## THE AMERICANS WITH DISABILITIES ACT AND THE INTERNET

11. The Internet has become an important source of information, a portal, and a tool for conducting business, engaging in everyday activities such as shopping, learning, banking, researching, as well as many other activities for sighted, blind, and visually impaired persons alike.

12. In today's technology-driven world, blind and visually impaired people have the ability to access websites using keyboards in conjunction with screen access software that vocalizes the visual information found on a computer screen or displays the content on a refreshable Braille display. This technology is known as screen reading software. Screen reading software is currently the only method a blind or visually impaired person may independently access the Internet. Unless websites are designed to be read by screen reading software, blind and visually impaired persons are unable to fully access websites, and the information, products, and services contained thereon.

13. Blind and visually impaired users of personal computers and mobile electronic devices have several screen reading software programs available to them. *JAWS* is a popular screen reading software program available for visually impaired users.

14. For screen reading software to function, the information on a website must be capable of being rendered into text. If the website content is not capable of being rendered into text, the blind or visually impaired user is unable to access the same content available to sighted users.

15. The international website standards organization, the World Wide Web Consortium, known throughout the world as W3C, has published version 2.0 of the Web Content Accessibility Guidelines ("WCAG 2.0" hereinafter). WCAG 2.0 are well-established guidelines for making websites accessible to blind and visually impaired people as well as other persons who require screen reading technology to use computers and access the internet. These guidelines are adopted and followed by business entities who comply with federal law and ensure their websites are accessible to individuals with disabilities, including the blind and visually impaired users.

16. Inaccessible or otherwise non-compliant websites pose common access barriers to blind and visually impaired persons. Common barriers encountered by blind and visually impaired persons include, but are not limited to, the following:

a. A text equivalent for every non-text element is not provided;

b. Title frames with text are not provided for identification and navigation;

c. Equivalent text is not provided when using scripts;

d. Forms with the same information and functionality as for sighted persons are not provided;

e. Information about the meaning and structure of content is not conveyed by more than the visual presentation of content;

f. Text cannot be resized without assistive technology up to 200 percent without loss of content or functionality;

g. If the content enforces a time limit, the user is not able to extend, adjust or disable it;

h. Web pages do not have titles that describe the topic or purpose;

i. The purpose of each link cannot be determined from the link text alone or from the link text and its programmatically determined link context;

j. One or more keyboard operable user interface lacks a mode of operation where the keyboard focus indicator is discernible;

k. The default human language of each web page cannot be programmatically determined;

l. When a component receives focus, it may initiate a change in context;

m. Changing the setting of a user interface component may automatically cause a change of context where the user has not been advised before using the component;

n. Labels or instructions are not provided when content requires user input;

o. In content which is implemented by using markup languages, elements do not have complete start and end tags, elements are not nested according to their specifications, elements may contain duplicate attributes and/or any IDs are not unique;

p. Inaccessible Portable Document Format (PDFs); and,

q. The name and role of all User Interface elements cannot be programmatically determined; items that can be set by the user cannot be programmatically set; and/or notification of changes to these items is not available to user agents, including assistive technology.

## FACTUAL BACKGROUND

17.     Defendant offers the commercial website, www.saksfithavenue.com, to the public. The website offers features which should allow all consumers to access the goods and services which Defendant offers in connection with its business.

18.     Based on information and belief, it is Defendant's policy and practice to deny Plaintiff, along with other blind or visually impaired users, access to Defendant's website, and to therefore specifically deny the goods and services that are offered and integrated with Defendant's locations. Due to Defendant's failure and refusal to remove access barriers to its website, Plaintiff

and visually impaired persons have been and are still being denied equal access to Defendant's locations and the numerous goods, services, and benefits offered to the public through Defendant's website.

### Defendant's Barriers on Defendant's Website Deny Plaintiff Access

19. Plaintiff is a visually impaired and legally blind person, who cannot use a computer without the assistance of screen reading software. However, Plaintiff is a proficient user of the *JAWS* screen reader and uses it to access the internet. Plaintiff has visited Defendant's website using the *JAWS* screen reader.

20. During Plaintiff's visits to Defendant's website, Plaintiff encountered multiple access barriers which denied Plaintiff full and equal access to the products, goods and services offered to the public and made available to the public on Defendant's website. Due to the widespread access barriers Plaintiff encountered on Defendant's website, Plaintiff has been deterred, on a regular basis, from accessing Defendant's website.

21. While attempting to navigate Defendant's website, Plaintiff encountered multiple accessibility barriers for blind or visually impaired people that include, but are not limited to, the following:

   a. *Lack of Alternative Text* ("alt-text"), or a text equivalent. Alt-text is invisible code embedded beneath a graphical image on a website. Web accessibility requires that alt-text be coded with each picture so that screen reading software can speak the alt-text where a sighted user sees pictures. Alt-text does not change the visual presentation, but instead a text box shows when the mouse moves over the picture. The lack of alt-text on these graphics prevents screen readers from accurately vocalizing a description of the graphics.

As a result, visually impaired customers are unable to determine what is on the website, browse, explore Defendant's programs and promotions, or make any purchases;

b. *Empty Links That Contain No Text* causing the function or purpose of the link to not be presented to the user. This can introduce confusion for keyboard and screen reader users;

c. *Redundant Links* where adjacent links go to the same URL address which results in additional navigation and repetition for keyboard and screen reader users; and

d. *Linked Images Missing Alt-text*, which causes problems if an image within a link contains no text and that image does not provide alt-text. A screen reader then has no content to present the user as to the function of the link, including information contained in PDFs.

22. Plaintiff attempted to do business with Defendant on Defendant's website and Plaintiff encountered barriers to access on Defendant's website.

23. Despite attempts to do business with Defendant on its website, the numerous access barriers contained on the website and encountered by Plaintiff have denied Plaintiff full and equal access to Defendant's website. As a result of the barriers on Defendant's website, Plaintiff continues to be deterred on a regular basis from accessing Defendant's website.

### Defendant Must Remove Barriers To Its Website

24. Due to the inaccessibility of Defendant's website, blind and visually impaired customers such as Plaintiff cannot fully and equally use or enjoy the products, goods, and services Defendant offers to the public on its website. The access barriers Plaintiff encountered on Defendant's website have caused a denial of Plaintiff's full and equal access in the past, and now continue to deter Plaintiff on a regular basis from accessing Defendant's website.

25. If Defendant's website was equally accessible to all, Plaintiff could independently navigate this websites and complete a desired transaction in the same manner as sighted individuals.

26. Through her attempts to use Defendant's website, Plaintiff has actual knowledge of the access barriers that make these services inaccessible and independently unusable by blind and visually impaired people.

27. Because maintaining and providing a website that is fully and equally accessible to all consumers, using the guidance of the success criteria outlined by the WCAG 2.0 Guidelines, would provide Plaintiff and other visually impaired consumers with full and equal access to Defendant's website, Plaintiff alleges that Defendant has engaged in acts of intentional discrimination, including but not limited to the following policies or practices:

a. Construction and maintenance of a website that is inaccessible to visually impaired individuals, including Plaintiff;

b. Failure to construct and maintain a website that is sufficiently intuitive so as to be equally accessible to visually impaired individuals, including Plaintiff; and,

c. Failure to take actions to correct these access barriers in the face of substantial harm and discrimination to blind and visually impaired consumers, such as Plaintiff, as a member of a protected class.

28. Defendant therefore uses standards, criteria or methods of administration that have the effect of discriminating or perpetuating the discrimination of others, as alleged herein.

29. The ADA expressly contemplates the type of injunctive relief that Plaintiff seeks in this action. In relevant part, the ADA requires:

"In the case of violations of . . . this title, injunctive relief shall include an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities. Where appropriate, injunctive relief shall also include requiring the . . . modification of a policy. . . (42 U.S.C. § 12188(a)(2).)

30. Because Defendant's website is not equally accessible, and because Defendant lacks a corporate policy that is reasonably calculated to cause its website to become and remain accessible, Plaintiff invokes the provisions of 42 U.S.C. § 12188(a)(2) and seeks a permanent injunction requiring Defendant to make the necessary changes to the website so that it complies with the ADA. This compliance may result in the Defendant retaining a qualified consultant to assist Defendant to comply with the ADA by making the website accessible, using the success criteria outlined in the WCAG 2.0 guidelines as a source of reference. As with other entities seeking to become ADA compliant, Defendant could utilize a consultant to:

a. Train Defendant's employees and agents who develop the Defendant's website on accessibility and compliance with the ADA using the success criteria outlined in the WCAG 2.0 guidelines as a source of reference;

b. Regularly evaluate the accessibility of Defendant's website to maintain its accessibility as required by the ADA using the success criteria outlined in the WCAG 2.0 guidelines as a source of reference;

c. Regularly test end-user accessibility of the website by blind or visually impaired screen reader users to ensure that Defendant's website is accessible to blind and visually impaired individuals who would access the website with screen reading technology; and,

d. Develop an accessibility policy that is clearly disclosed on its website, with contact information for users to report accessibility-related problems and be provided with meaningful resolution after Defendant has investigated and identified the specific issue.

31. If Defendant's website was accessible, Plaintiff and similarly situated blind and visually impaired people could independently view offerings on the website, shop for and otherwise research related products and services available via Defendant's website.

32. Although Defendant may currently have centralized policies regarding the maintenance and operation of its website, Defendant lacks a plan and policy reasonably calculated to make its websites fully and equally accessible to, and independently usable by, blind and other visually impaired consumers.

33. Without injunctive relief, Plaintiff and other visually impaired consumers will continue to be unable to independently use the Defendant's website in violation of their rights.

## FIRST CAUSE OF ACTION

## VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT OF 1990

## 42 U.S.C. § 12181 *et seq*. WWW.SAKSFIFTHAVENUE.COM

34. Plaintiff re-alleges and incorporates by reference all paragraphs alleged above.

35. Section 302(a) of Title III of the ADA, 42 U.S.C. § 12101 *et seq.*, provides: "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." (42 U.S.C. § 12182(a).)

36. Defendant's website is considered a public accommodations within the definition of Title III of the ADA, 42 U.S.C. § 12181(7) because Defendant's website is a service, privilege, or advantage of Defendant's business.

37. Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities the opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity. (42 U.S.C. § 12182(b)(1)(A)(i).)

38. Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities an opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodation, which is equal to the opportunities afforded to other individuals. (42 U.S.C. § 12182(b)(1)(A)(ii).)

39. Under Section 302(b)(2) of Title III of the ADA, unlawful discrimination also includes, among other things:

"[A] failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations; and a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden."

(42 U.S.C. § 12182(b)(2)(A)(ii)-(iii).)

40. Pursuant to 42 U.S.C. §12181(7)(E) Defendant's website is a *place of public accommodation* under the ADA because it serves to augment its business by providing the general public information on the various programs and services and educating the general public as to its extent of its products and services, and also to provide the general public with the ability to purchase goods and services directly from the site. As such, the Defendant's website must be in compliance with the ADA. However, the Defendant's website is\was not in compliance with the ADA. Plaintiff has suffered an injury in fact because of the website's (and Defendant's) non-compliance with the ADA.

41. As a result of the inaccessibility of Defendant's website and by the barriers to access in its website (when removal of those barriers is readily achievable), Defendant has denied individuals with disabilities who are visually impaired full and equal enjoyment of the information and services that Defendant has made available to the general public on its website, in derogation of 42 U.S.C. §12101 et. seq., and as prohibited by 42 U.S.C. §12182 et. seq.

42. Therefore, due to Plaintiff's disability and Defendant's failure to have its website adequately accessible to individuals with visual impairments, Plaintiff was unable to comprehend Defendant's website and could not take advantage of many offerings or information contained therein.

43. Defendant has violated the ADA (and continues to violate the ADA) by denying access to its website to individuals with disabilities who are visually impaired and who require the assistance of interface with screen reader software to comprehend and access internet websites.

42. The acts alleged herein constitute violations of Title III of the ADA, and the regulations promulgated thereunder. Plaintiff, who is a member of a protected class of persons

under the ADA, has a physical disability that substantially limits the major life activity of sight within the meaning of 42 U.S.C. §§ 12102(1)(A)-(2)(A). Furthermore, Plaintiff has been denied full and equal access to Defendant's website, has not been provided services which are provided to other patrons who are not disabled, and has been provided services that are inferior to the services provided to non-disabled persons. Defendant has failed to take any prompt and equitable steps to remedy its discriminatory conduct. These violations are ongoing.

43. Pursuant to 42 U.S.C. § 12188 and the remedies, procedures, and rights set forth and incorporated therein, Plaintiff, requests relief as set forth below.

## PRAYER FOR RELIEF

**WHEREFORE, Plaintiff prays for judgment against Defendant, as follows:**

1. A Declaratory Judgment that, at the commencement of this action, Defendant was in violation of the specific requirements of Title III of the ADA 42 U.S.C. § 12181 *et seq.*, and the relevant implementing regulations of the ADA, for Defendant's failure to take action that was reasonably calculated to ensure that its websites are fully accessible to, and independently usable by, blind and visually impaired individuals;

2. A preliminary and permanent injunction enjoining Defendant from further violations of the ADA, 42 U.S.C. § 12181 *et seq.*, with respect to Defendant's website;

3. A preliminary and permanent injunction requiring Defendant to take the steps necessary to make Defendant's website readily accessible to and usable by blind and visually impaired individuals;

4. For attorneys' fees and expenses pursuant to all applicable laws including, without limitation, pursuant to 42 U.S.C. § 12188(a)(1);

5. For pre-judgment interest to the extent permitted by law;

6. For costs of suit; and

7. For such other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby respectfully requests a trial by jury on all appropriate issues raised in this Complaint.

Dated: June 17, 2019

Respectfully submitted,

*/s/ Stamatios Stamoulis*
Stamatios Stamoulis
New York Bar No.: 3028669
Stamoulis & Weinblatt LLC
800 N. West Street, Third Floor
Wilmington, DE 19801
Tel: (302) 999-1540
Email: stamoulis@swdelaw.com
*Counsel for Plaintiff*


*/s/ Yvette J. Harrell*
Yvette J. Harrell *(pro hac anticipated)*
Florida Bar No: 12936
Legal Justice Advocates, LLP
1629 K Street NW, Suite 300
Washington, D.C. 20006
Tel: (202) 290-6671
Email: yh@legaljusticeadvocates.com
*Counsel for Plaintiff*